[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2002
THOMAS K. KAHN
CLERK

No. 01-11858

_____

D. C. Docket No. 98-00986-CV-J-21B

JAMES E. LOSKILL,

Plaintiff-Appellee,

versus

BARNETT BANKS, INC. SEVERANCE PAY
PLAN, THE BARNETT BANKS, INC. SEVERANCE PAY
PLAN, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 25, 2002)**

Before WILSON, RONEY and FAY, Circuit Judges.

PER CURIAM:

The Barnett Banks, Inc. Severance Pay Plan, the Employee Benefits

Committee of the Barnett Banks, Inc. Severance Pay Plan, the NationsBank

Corporate Benefits Committee, and the NationsBank Benefits Appeals Committee appeal the district court's grant of summary judgment in favor of James E. Loskill on his claim for severance benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.

BACKGROUND

On August 29, 1997, Barnett Banks, Inc. entered into a merger agreement with NationsBank, whereby Barnett shareholders would receive shares of NationsBank stock in exchange for their Barnett stock. This merger was approved by the shareholders on December 19, 1998.

Sometime after the merger agreement was entered into but before the shareholders approved the merger, Charles Loring, a manager in NationsBank's human resources department, contacted Jeff McCutcheon, a manager in Barnett's human resources department. He recommended that Barnett consider adding a provision to its severance plan that would require employees to execute a release prior to receiving severance benefits under the plan. After the executives in the human resources department considered this proposal and determined that it made good business sense to protect the company from impending litigation, McCutcheon contacted Cathy Cosby, senior counsel and corporate secretary for

Barnett, and asked her to place the release amendment on the agenda for the next and final board meeting of Barnett's board of directors.[1]

After the amendment was placed on the agenda, it was assigned to the Executive Compensation and Management Development Committee. On November 19, 1997, the committee recommended approval of this amendment by the full board. Later that day, after determining that it made good business sense, the board adopted the release amendment, which provides,

> Notwithstanding any provision of the Plan to the contrary, Severance Benefits shall not be paid to an employee unless and until the Employee delivers a full release to his Employers of all employment-related claims, including all rights and claims under the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

None of the board members knew that the release amendment was proposed by NationsBank, but when someone asked whether NationsBank would approve, the board was informed that NationsBank supported the amendment.

During this time, Loskill served as the president of a subsidiary branch of Barnett in Pinellas County, Florida. Following the merger, Loskill was terminated and advised that he would be entitled to severance benefits if he executed a release. He refused to do so, and, as a result, he filed a formal claim for benefits with the

---

[1]This was the last opportunity to amend the plan for two years, because no changes could be made to the plan for two years after a change in control.

3

plan administrator on July 31, 1998. The NationsBank Benefits Appeals Committee reviewed his claim and determined that he would be entitled to $110,347.73 in benefits if he executed a release.

Consequently, Loskill brought suit under ERISA, asserting that he was wrongly denied benefits because he refused to execute a release. He claimed that the release violated the plan's No Cut-back provision. In a subsequent amendment to his complaint, Loskill asserted that the amendment also was invalid, because the amendment was not adopted in accordance with the procedures set forth in the plan. Both Loskill and Barnett moved for summary judgment,[2] and, on June 28, 2000, the court granted summary judgment in favor of Loskill. It found that the release amendment violated the No Cut-back provision and that Barnett did not follow the amendment procedures set forth in the plan. It then sua sponte determined that the release was void, because Barnett acted in bad faith. The district court awarded Loskill attorney's fees and costs, as well as prejudgment interest at the statutory rate in Florida.

STANDARD OF REVIEW

We review the grant of summary judgment de novo, "applying the same standards as the district court." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*,

---

[2]This was Loskill's second motion for summary judgment.

117 F.3d 1278, 1284 (11th Cir. 1997). Summary judgment should be awarded when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Viewing the evidence in the light most favorable to the nonmoving party, we ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stewart*, 117 F.3d at 1285.

DISCUSSION

I.

The district court found that the release amendment was prohibited under the No Cut-back provision, because "the plain meaning of [that] provision is to prevent the reduction or elimination of severance benefits upon the passing of a Plan amendment." That provision provides, "No amendment will eliminate or reduce any Employee's right to Severance Benefits accrued before the effective date of the amendment, to an amount less than the amount he would have received if he had had a Qualified Termination the day before the effective date of the amendment." We cannot find that the release amendment was prohibited under that language.

"Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright*

5

*Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Once a sponsor contractually

cedes any of those rights, however, it is bound by its contract. *Id.* at 85. As a

result, Barnett was not entitled to amend the plan in a way that would violate the

anticutback provision, because it ceded its rights to do so under that provision.

Thus, we must determine whether the release amendment constitutes a reduction or

elimination of benefits under that provision.

In *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996), the United States

Supreme Court addressed whether an employer's requirement that an employee

sign a release of all claims against the employer prior to receiving benefits under a

welfare plan violated § 406 of ERISA. Although the Court did not address

whether such a requirement would violate an anticutback provision, its discussion

provides some guidance as to whether we should view the release amendment as a

reduction or elimination of benefits or as a condition precedent to the receipt of

those benefits. The Court stated,

> [An] employer can ask [an] employee to continue to work for the employer,
> to cross a picket line, or to retire early. The execution of a release of claims
> against the employer is functionally no different; like these other conditions,
> it is an act that the employee performs for the employer in return for
> benefits.

*Id.* at 894.  Thus, it seems clear that the Supreme Court views this type of requirement as a condition precedent.[3]

In addition, the language of the anticutback provision further supports a determination that the release amendment should be viewed as a condition precedent.  Under that provision, the reduction or elimination of accrued benefits is prohibited.  The release amendment, however, merely affects an employee's entitlement to those benefits.  The amount of benefits that Loskill would have received under the plan was not altered by the release amendment; rather, Loskill's receipt of those benefits was conditioned upon the execution of a release.  If he had executed a release, he would have received the amount of benefits available to him prior to the amendment.

Thus, as we find that the release amendment to the plan merely was a condition precedent, we must conclude that the release amendment does not violate the anticutback provision of the plan.  Consequently, we now must determine whether the board failed to follow the amendment procedures in the plan, thus voiding the release amendment.

II.

---

[3]Indeed, the release amendment in this case seems no different than other conditions precedent within the plan.  For example, under the plan, the receipt of benefits is conditioned upon the occurrence of a qualified termination and the nonoccurrence of a disqualifying event.

7

The district court found "that the [release] [a]mendment was conceived, approved, and later administered with bad faith." It cited the following as evidence of bad faith: (1) no changes could be made to the plan for two years after a change in control; (2) the release amendment was adopted in response to the threat of lawsuits by employees; and (3) "Barnett, in its hurry to do NationsBank's bidding, failed to even consult the Plan's amendment procedures."

An employer or plan sponsor generally may "adopt, modify, or terminate" a welfare plan at will, but once it contractually cedes that right, it is bound by its contract. *Curtiss-Wright Corp.*, 514 U.S. at 78, 85. Despite this rule, courts typically will not invalidate an amendment for technical violations of a plan's procedures absent a showing of bad faith or active concealment on the part of the sponsor or detrimental reliance on the part of the beneficiaries. *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 40 F.3d 1202, 1211–12 (11th Cir. 1994) (per curiam); *Alford v. Kimberly-Clark Tissue Co.*, 14 F. Supp. 2d 1290, 1299 (S.D. Ala. 1998). This approach has been found to "serve[] the dual purpose of protecting the rights of beneficiaries to the plan while allowing flexibility to the plans to grow or diminish at any time, as allowed by law." *Whitfield v. Torch Operating Co.*, 935 F. Supp. 822, 831 (E.D. La. 1996).

8

The amendment procedures set forth in the plan in this case provides as follows:

> The Company will have the right to amend the Plan from time to time. The Committee will determine that an amendment is appropriate and will determine whether the amendment may significantly alter the cost or expense of the Plan. The Committee or its agent will draft the amendment. Each amend-ment must be approved by a majority of the Committee members then in office. A duly authorized officer of the Company will adopt each amendment by placing his signature thereon. If the amendment may significantly alter the Plan's costs or expense, the Board must approve or ratify it by resolution. The Committee will deliver a copy of each amendment to each Employer within 30 days after adoption.

Loskill claims that these procedures were violated, because the release amendment was not considered by the committee and because the notification procedure was not followed. We, however, need not address this issue, because even if there was a technical violation of the procedures, the record does not support the district court's finding of bad faith.

The record indicates that McCutcheon was contacted by Loring of NationsBank, who recommended that Barnett consider amending the plan to include a release requirement, and that a release amendment was proposed to the board after McCutcheon and others in the human resources department determined that amending the plan made good business sense. The record also indicates that the November 19, 1997 board meeting was the last opportunity that Barnett had to

9

amend the plan, because the plan provided that no changes could be made to the plan for two years after a change in control.

It is, however, what we do not find in the record that compels our conclusion that the record does not support a finding of bad faith. There is no indication in the record that NationsBank ever contacted Barnett about this matter after Loring's initial telephone call. In addition, nothing in the record suggests that NationsBank was involved in any way in the adoption of the release amendment or that the board merely accepted NationsBank's recommendation without independently considering it. Although it is clear from the record that the plan procedures were not consulted, it also seems clear that none of the employees and board members involved in the consideration of this amendment believed that the procedure they followed violated the plan.[4] Finally, even though the board was concerned about threats of litigation, it considered the release amendment and determined that it made good business sense to adopt it; nothing in the record indicates that the board adopted the release amendment merely to deprive employees of benefits under the plan.

---

[4]Although there were only a few depositions in the record, those employees who were deposed thought they were following normal procedures. We also can infer that the board would not have taken this action if it believed it did not have the authority to do so.

As a result, we cannot conclude that the release amendment was adopted in bad faith.[5]

CONCLUSION

Thus, we REVERSE the district court's grant of summary judgment in favor of Loskill and REMAND this case to the district court for proceedings consistent with this opinion.[6]

---

[5]Although we do not find that the record before us supports a finding of bad faith, we remand this case with the instruction that the district court further consider whether there was bad faith, active concealment, or detrimental reliance.

[6]In light of our holding, we need not consider what statutory rate of interest should have been applied to determine the amount of prejudgment interest.

11

RONEY, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the district court on the ground that the release amendment violates the anticutback provision of the severance plan because it reduces the value of severance benefits after they have already accrued. The plan's anticutback provision reads, "No amendment will eliminate or reduce any Employee's right to Severance Benefits accrued before the effective date of the amendment." The argument that the release provision does not reduce the accrued benefits to which Loskill would be entitled because it "merely affects an employee's entitlement to those benefits" simply misinterprets the language and the intent of the provision. The anticutback provision must be interpreted to mean the right to "full" accrued severance benefits.

If an employee must give up something of value to get the benefits otherwise accrued, that effectively reduces the benefits. The right to sue for employment discrimination carries economic value. The release amendment forces Loskill to forfeit that right and value to Barnett. This reduces the net value to Loskill of the severance benefits to be paid to him. Thus, the amendment requires Loskill to sign a release that "cuts-back" the value of his severance benefit by the value of his employment discrimination claim. This is precisely the type of amendment the anticutback provision is intended to prevent.

12

Reliance upon *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) to hold that this is a mere "condition precedent" to the receipt of those benefits is simply misplaced. *Lockheed* addressed a release provision that affected prospective benefits, not accrued benefits. The Supreme Court there held that requiring execution of a release was a permissible condition precedent to the receipt of *increased* benefits. The condition was required to be met for additional benefits to accrue. The release amendment in this case affects benefits that have already accrued. Any condition placed upon the receipt of benefits after they have already accrued is a "condition subsequent," not a "condition precedent." If that condition requires the employee to give up something of value, it surely violates the anticutback provision. If Barnett had amended its plan to cease further benefit accruals unless and until a release provision was executed, *Lockheed* would apply. But that is not the case here.

By forcing Loskill to exchange something of value for his already accrued benefits, Barnett has "cutback" his accrued benefits in a way that is not permissible under the clear terms of the plan.

I would affirm the judgment for Loskill.

Since the Court has decided to the contrary, it then applied the tests of bad faith, active concealment, and detrimental reliance to determine the validity of the

13

amendment which was adopted in violation of the amendment procedures required by the plan. These tests were heretofore established in cases where the plan had no provisions for amendment. *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 40 F.3d 1202, 1211-12 (11th Cir. 1994); *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560 (7th Cir. 1995).

Having decided that the amendment here violates the anti-cutback provision of the plan, I need not decide whether such tests should apply to plans which provide procedures for amendment such as this one, or whether the mere violation of amendment procedures required by the plan makes the amendment invalid without more. *See Albedyll v. Wis. Porcelain Co. Revised Ret. Plan*, 947 F.2d 246 (7th Cir. 1991) (amendment that is not passed in accordance with the plan's amendment procedures is invalid); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 57-8 (4th Cir. 1992) (ERISA § 402(b)(3) requires that any plan modification must be implemented in conformity with the amendment procedures or it is of no effect); *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986) (a written plan may not be amended orally); *see also Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 85 (1995) ("whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level."); *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510, 515-16

(1997) (an "employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan." ).

As far as we have been able to determine, this is the first circuit court case that has held that an amendment adopted in violation of the procedures set forth in a plan is invalid only upon a further showing of bad faith, active concealment, or detrimental reliance. *But see Alford v. Kimberly-Clark Tissue Co.,* 14 F. Supp. 2d 1290, 1299 (S.D. Ala. 1998) *and Whitfield v. Torch Operating Co. ,* 935 F. Supp. 822, 831 (E.D. La. 1996).