

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-10-2004

# Depenbrock v. Cigna Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-3575

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Depenbrock v. Cigna Corp" (2004). *2004 Decisions.* Paper 109.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3575
_____

JOHN DEPENBROCK,

Appellant

v.

CIGNA CORP.; CIGNA PENSION PLAN
_____

Appeal from the United States District
Court
the Eastern District of Pennsylvania
D.C. No.: 01-cv-06161
District Judge:  Honorable Robert F.
Kelly
_____

Argued:  September 21, 2004

Before: McKEE, ROSENN and WEIS,
Circuit Judges

(Filed: November 10, 2004)

Stephen R. Bruce, Esq. (Argued)
805 15th Street, N.W.
Washington, DC 20005-2271

William M. O'Connell, III, Esq.
Barbin, Lauffer & O'Connell
608 Huntingdon Pike
Rockledge, PA 19046

Counsel for Appellant

Joseph J. Costello, Esq. (Argued)
Tamsin J. Newman
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Counsel for Appellee
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

This case is a by-product of corporate America's recent effort to curb costs by, inter alia, scaling back the benefits provided under pension plans. John Depenbrock ("Depenbrock") claims that his employer, CIGNA Corporation ("CIGNA"), violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., by denying him benefits without the required notice and lawful amendment to the pension plan. Depenbrock also alleges that CIGNA violated ERISA by failing to provide him an opportunity to review pertinent documents relating to his denial-of-benefits claim, and by breaching the fiduciary duty owed as plan administrator.

The District Court granted CIGNA's motion for summary judgment and denied  Depenbrock's cross motions. We reverse the summary judgment in favor of CIGNA and remand with directions to enter summary judgment for Depenbrock.

I.

In 1983, Depenbrock began

working at CIGNA. At that time, CIGNA provided its employees with a generous traditional pension plan.[1] On November 4, 1997, presumably to cut costs, CIGNA proposed amendments to its plan that were to become effective January 1, 1998. According to the amendments, younger, short-term employees were to be transferred to a more modest "cash balance" pension formula ("the New Plan"),[2] while long-term employees – such as Depenbrock – would "grandfather" in under the traditional plan ("the Old Plan") and receive higher benefits.[3] In addition, the proposed plan amendment included a "Rehire Rule" which stated that long-term employees who left CIGNA and were re-employed after December 31, 1997, would not participate in the Old Plan upon return but instead would be transferred immediately into the New Plan. For reasons unknown, CIGNA did not formally adopt the amendment and "Rehire Rule" until December 21, 1998, when CIGNA's CEO executed a written adoption in accordance with the amendment procedure set forth in the plan.

On January 2, 1998, Depenbrock resigned from CIGNA to work for another company. However, Depenbrock was rehired at CIGNA on November 30, 1998. Depenbrock claims that the pension rule in effect when he was rehired provided that he immediately resume participation under the Old Plan. Depenbrock bases this assertion on the fact that the proposed amendment to CIGNA's plan had not yet been formally adopted when he was rehired on November 30, 1998. Because the formal adoption date came twenty-two days _after_ Depenbrock returned to work, Depenbrock asserts that the amendment does not apply to him. To hold otherwise, Depenbrock argues, would amount to an impermissible retroactive reduction of his

---

[1]A traditional pension plan is a defined benefit plan that "pays an annuity based on the retiree's earnings history, usually the most recent or highest paid years, and the number of completed years of service to the company." Campbell v. BankBoston, N.A., 327 F.3d 1, 4 (1st Cir. 2003). The CIGNA pension plan was determined by factoring in the retiree's credited years of service, 2% of his 36-month average compensation at the time of retirement, minus a Social Security offset.

[2]"Cash balance" plans "guarantee an employee a certain contribution level, usually an annual percentage of salary, plus a fixed percentage of interest." Campbell, 327 F.3d at 4. CIGNA's "cash balance" plan offered employees an account balance to which was credited an amount based on eligible earnings and credited years of service, as well as an annual declared interest rate.

[3]CIGNA refers to the Old Plan as "Part A" and the New Plan as "Part B." We employ the terms "Old" and "New" in order to orient the plans chronologically.

2

rights.[4]

CIGNA counters that although the amendment was not formally adopted until December 21, 1998, the announcement of the proposed changes on November 4, 1997, coupled with the CEO's conduct subsequent to the announcement, served to implement and retroactively ratify the amendment as of November 4, 1997. As such, CIGNA asserts that the effective date of the amendment was January 1, 1998 – the effective date specified in the internal announcement of the amendment. Because Depenbrock resigned from CIGNA on January 2, 1998, one day after the specified effective date of the "Rehire Rule," CIGNA contends the "Rehire Rule" lawfully applies.

Depenbrock filed suit against CIGNA in the Eastern District of Pennsylvania on December 11, 2001, for wrongful denial of ERISA benefits, disclosure violations, and breach of fiduciary duty. During discovery, Depenbrock moved to compel the production of fifty-two documents that CIGNA claimed were protected by the attorney-client privilege and/or "work product" doctrine. The District Court invited CIGNA to submit an ex parte memorandum in support of its claims. After conducting an in camera review, the District Court denied Depenbrock's motion to compel without offering any explanation for its finding. The District Court held oral argument on cross motions for summary judgment and on July 31, 2003, issued an opinion and order granting summary judgment to CIGNA. Depenbrock timely appealed.

II.

This case having arisen under ERISA, the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the final judgment of the District Court. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990).

We review de novo the District Court's order granting CIGNA's motion for summary judgment. Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir. 1993). Motions for summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Ryan by Capria-Ryan v. Fed. Express Corp., 78 F.3d 123, 125 (3d Cir. 1996).

Depenbrock initially raised five issues on appeal: 1) whether the "Rehire Rule" was effective January 1, 1998; 2) whether the plan amendment adopted December 21, 1998, can be given retroactive effect; 3) whether CIGNA complied with ERISA's notice and disclosure requirements; 4) whether Depenbrock's failure-to-produce claim against CIGNA fails as a matter of law;

_____

[4]One of CIGNA's actuaries estimated that transferring Depenbrock from the Old Plan to the New Plan will result in his losing $800,000 in benefits, assuming he continued to work for CIGNA until age 55.

and 5) whether the "fiduciary exception" to the attorney-client privilege compels CIGNA to produce fifty-two ostensibly privileged documents. Disposition of the first two issues renders discussion of the remaining issues unnecessary. We therefore turn to the effective date of the amendment and analyze whether the amendment may be applied retroactively.

### A. Effective Date of the Amendment

Before turning to the merits, we first set forth some background on ERISA. "Erisa does not create any substantive entitlement to employer-provided . . . welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); see Bellas v. CBS, 221 F.3d 517, 522 (3d Cir. 2000) ("ERISA neither mandates the creation of pension plans nor in general dictates the benefits a plan must afford once created."). However, "ERISA requires that all employee benefit plans be 'established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1) . . . ." Ryan by Capria-Ryan, 78 F.3d at 126. Thus, "[t]his section precludes oral or informal amendments to employee benefit plans." Confer v. Custom Eng'g, 952 F.2d 41, 43 (3d Cir. 1991) (citing Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990)). Although the Supreme Court has established a de minimus standard for compliance with ERISA, see Curtiss-Wright, 514 U.S. 73, the plan must identify the person who has the authority to amend the plan, and amendments must be conducted according to formal procedures. 29 U.S.C. § 1102.[5] "[W]hatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." Curtiss-Wright, 514 U.S. at 85. Thus, an amendment is ineffective if it is inconsistent with the governing instruments. Delgasso v. Sprang & Co., 769 F.2d 928, 935-36 (3d Cir. 1985); see Confer, 952 F.2d at 43 ("Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan.").

As a threshold matter, Depenbrock

---

[5]The pertinent provisions of 29 U.S.C. § 1102 provide:
> (a) Named fiduciaries
> (1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. . . .
> * * *
> (b) Requisite features of plan: Every employee benefit plan shall--
>       * * *
> (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and
> (4) specify the basis on which payments are made to and from the plan.

claims that CIGNA's CEO lacked authority to amend the plan. Alternatively, Depenbrock contends that even if the CEO was authorized to amend the plan, he failed to comply with CIGNA's own written amendment procedures so that the amendment was not effective until December 21, 1998, the date when CIGNA finally executed revised formal plan documents in accordance with the amendment procedure set forth in the plan. Because the amendment's effective date came twenty-two days <u>after</u> Depenbrock was rehired, Depenbrock contends the adverse amendment does not apply to him.

CIGNA counters that its CEO was duly authorized to amend the plan and he did so pursuant to the doctrine of ratification. According to CIGNA, although the plan amendment was not formally adopted until December 21, 1998, the CEO's approval on November 4, 1997, of a summary of the proposed "cash balance" pension formula and "Rehire Rule," coupled with his subsequent conduct, effected a retroactive ratification of the plan amendment to be effective January 1, 1998. Accordingly, CIGNA claims that the "Rehire Rule" was effective as of the date specified for the amendment – January 1, 1998 – and applied to Depenbrock because he resigned on January 2, 1998, one day <u>after</u> the alleged effective date of the rule.

We first address the CEO's authority to amend. As a threshold determination, we agree with the District Court that the CEO was authorized to amend the plan and adopt the "Rehire

Rule." Section 16.1 of the CIGNA plan specified three methods for amendment: 1) a resolution of the Board of Directors; 2) a resolution of the People's Resources Committee of the Board of Directors ("PRC"); or 3) a written instrument approved and executed by one or more duly authorized officers of CIGNA. On July 23, 1997, the PRC adopted a resolution authorizing the CEO to:

> adopt amendments to the CIGNA Pension Plan . . . to be effective January 1, 1998 (or a later date if deemed appropriate by the CEO), as necessary or appropriate to . . . [c]hange the Plan's current "final average pay" benefit accrual formula to a "cash balance" formula for all eligible participants under the Plan except those who (1) are currently accruing benefits under the formula in effect on December 31, 1988, and (2) whose combined age plus years of credited service . . . is 45 or more as of December 31, 1997 . . . .

This resolution gave the CEO plenary authority to amend the plan from a "final average pay" to a "cash balance" formula. The exception provided for long-term employees does not insulate them from the CEO's decision-making authority so much as clarify that long-term employees are not subject to the plan changes. Accordingly,

we conclude that the CEO had authority to adopt the "Rehire Rule" amendment.

However, the CEO did not exercise his authority to amend the plan until December 21, 1998, the date the written amendment was executed and formally adopted. ERISA specifies that a valid amendment can only be made in the manner specified in the plan document. Curtiss-Wright, 514 U.S. at 85. Regardless of the method specified for amendment, however, an indispensable requirement under ERISA for effective plan amendment is that the amendment be in writing. See Hozier, 908 F.2d at 1163 (citing Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986) ("ERISA precludes oral modifications of employee benefit plans.")); Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir.1989) (stating that "informal" or "unauthorized" modification of pension plans is "impermissible" under ERISA); Degan v. Ford Motor Co., 869 F.2d 889, 895 (5th Cir.1989) ("ERISA mandates that [a] plan itself and any changes made to it [are] to be in writing."); Musto v. Am. Gen. Corp., 861 F.2d 897, 910 (6th Cir.1988) ("[A] written employee benefit plan may not be modified or superceded by oral undertakings on the part of the employer."), cert. denied, 490 U.S. 1020 (1989); Moore v. Metro. Life Ins. Co., 856 F.2d 488, 492 (2d Cir.1988) ("[A]n ERISA welfare plan is not subject to amendment as a result of informal communications between the employer and plan beneficiaries."). The CEO did not sign a written instrument amending the plan until December 21, 1998, more than three weeks after Depenbrock had been rehired. Thus, December 21, 1998, is the effective date of the amendment. However, this does not resolve the issue, for we must consider whether the doctrine of ratification, urged by CIGNA, retroactively rendered the amendment and "Rehire Rule" effective as of January 1, 1998.

B. Retroactive Ratification

The doctrine of ratification provides that an improperly authorized amendment may be ratified ex post by subsequent acts. See Curtiss-Wright, 514 U.S. at 85. Moreover, a validly accomplished ratification ordinarily must be given retroactive effect, rendering the ratified action valid as of the original decision date. Schoonejongen v. Curtiss-Wright, Nos. 92-5695 & 92-5710, slip op. at 3 (3d Cir. Aug. 30, 1995). However, ratification is prohibited where the amendment retroactively reduces the intervening rights of third parties, such as plan participants. See Curtiss-Wright v. Schoonejongen, 143 F.3d 120, 124-25 (3d Cir. 1998) (on remand) (rejecting ex post ratifications that defeat intervening rights); Confer, 952 F.2d at 43 (holding that an amendment limiting eligibility can operate only prospectively); 2A William Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 782, at 647-48 (perm. ed. rev. vol. 1992) ("Ratification cannot relate back so as to defeat intervening rights of strangers to the transaction.").

In the instant case, the District Court concluded that the December 21, 1998, date of formal adoption is not fatal to the adoption of the amendment to the

"Rehire Rule" as of January 1, 1998. According to the District Court, the CEO "manifested his intent" to amend the "Rehire Rule," effective January 1, 1998, by his approval of a summary of the proposed amendment on November 4, 1997. Furthermore, the CEO's actions subsequent to his approval ostensibly "constituted a ratification of the amendment both express and implied." The District Court cites as proof the following subsequent conduct: the CEO's failure to voice opposition to the "Rehire Rule" described in the "Signature Benefits Retirement Kit" distributed to participants in December, 1997; the CEO's failure to object to the "Rehire Rule" described in the Summary Plan Description that was generated for the New Plan in October, 1998; and the CEO's express execution of the formal amendment to the plan on December 21, 1998.

Unfortunately for CIGNA, the District Court's reliance on the doctrine of ratification is misplaced because ratification would effect a retroactive reduction of Depenbrock's accrued benefits under the Old Plan. Given that the amendment was not formally adopted until December 21, 1998, Depenbrock acquired rights in the interval before affirmance – namely, the right to receive benefits under the Old Plan – and retained his right to accrued benefits, instead of having to settle for the more modest benefits provided under the New Plan. Because ratification of the amendment as of November 4, 1997, would unlawfully deprive Depenbrock of intervening substantial benefits, ratification is ineffective.

CIGNA argues nonetheless that the amendment did not reduce Depenbrock's then-accrued benefits under the plan because Depenbrock worked for only a short period in 1998 before the amendment became effective on December 21, 1998. Because Depenbrock worked only a fraction of the year, CIGNA contends he did not amass the 1,000 work hours needed to accrue a year of service credit under the Old Plan. Because Depenbrock allegedly accrued no service credit under the Old Plan, retroactive application of the "cash balance" formula to his service following his rehire did not reduce any accrued benefit. As such, CIGNA claims there is nothing unlawful in subjecting Depenbrock to the "Rehire Rule."

Even if we were somehow to conclude that excluding Depenbrock from the Old Plan was not a retroactive reduction of benefits, CIGNA's argument fails because it wrongly assumes that CIGNA could transfer Depenbrock out of the Old Plan and into the New Plan without effectuating another formal plan amendment. CIGNA contends that even if the amended plan were not properly adopted until December 21, 1998, CIGNA could leave Depenbrock in the Old Plan for twenty-two days, and then transfer him to the New Plan on December 21, 1998, the effective date of the amendment. However, CIGNA overlooks that it would have no authority upon which to transfer Depenbrock without effectuating another formal plan amendment, which it did not do.

Moreover, CIGNA's assertion that

the amendment did not reduce Depenbrock's accrued benefits is premised on an unsubstantiated interpretation of ERISA's "Anti-cutback" rule, 29 U.S.C. § 1054(g).[6] The "Anti-cutback" rule prohibits a plan amendment from decreasing a participant's "accrued benefits." Id.; see, e.g., Cent. Laborers' Pension Fund v. Heinz, 214 S. Ct. 2230, 2237 (2004); Bellas, 221 F.3d at 522 ("[A] plan amendment that retroactively reduced benefits promised to plaintiffs for almost seven years was precisely the sort of inequity Congress designed ERISA to prevent."). ERISA defines "accrued benefit" as an individual's right to a retirement benefit "determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23); see Berger, 911 F.2d at 917. CIGNA construes "accrued benefit" narrowly to mean purely a dollar amount of benefits. According to this interpretation, retroactive amendments to a plan are permissible so long as the dollar amount of accrued benefits is not reduced. CIGNA claims – which Depenbrock disputes – that transferring Depenbrock to the New Plan does not reduce his dollar amount of benefits because the benefits he earned under the Old Plan were converted into an opening account balance in the New Plan.[7]

Regardless of the merits of Depenbrock's challenge to CIGNA's assertion, CIGNA's argument fails because it is predicated upon a proposed treasury regulation that is not yet the law. See Prop. Treas. Reg. § 1.411(d)-3(a)(4), Example 2, 69 Fed. Reg. 13769 (Mar. 24, 2004) (proposing to reinterpret the "Anti-cutback" rule so as to limit the protection of accrued benefits to purely a dollar amount). Although the Treasury Department retains interpretive jurisdiction over the "Anti-cutback" rule, see 43 Fed. Reg. 47713 (Oct. 17, 1978), "a proposed regulation does not represent an agency's considered interpretation of its statute . . . ." Commodity Futures Trading Comm'n

<hr />

[6]29 U.S.C. § 1054(g) provides in relevant part:
(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .
(2) For purposes of paragraph (1), a plan amendment which has the effect of--
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. . . .

<hr />

[7]Depenbrock maintains that CIGNA credits the initial "cash balance" accounts of rehired employees like him with less than the full value of their previously earned annuities. As a result, he claims employees start with lower benefits for purposes of the "cash balance" formula than they had before and it takes years for rehired employees to catch-up with where they began.

v. Schor, 478 U.S. 833, 845 (1986); see, e.g., Ca. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1173 n.5 (9th Cir. 1990) ("We decline to take cognizance of the proposed regulation however, because 'a proposed regulation does not represent an agency's considered interpretation of its statute . . . .'") (quoting Schor, 478 U.S. at 845).

Until the proposed treasury regulation becomes law, the current regulations govern.[8] The current regulations, 26 C.F.R. § 1.411(d)-3(b),[9]

prohibit plan amendments that "directly or indirectly" affect accrued benefits. "Plan provisions indirectly affecting accrued benefits include, for example, provisions relating to years of service and breaks in service for determining benefit accrual . . . ." Id. Because CIGNA's amendment adopts the "Rehire Rule" that "directly or indirectly" affects the calculation of benefits, the amendment as applied to Depenbrock is prohibited.

Even if Depenbrock had been notified of the proposed "Rehire Rule" by the "Signature Retirement Benefits Kit" – as CIGNA urges –  such notice was insufficient to have implemented the amendment because ERISA provides that amendments to a plan may only occur if made in writing. See supra Part II.A. The written amendment, as previously stated, was not executed until December 21, 1998. Thus, December 21, 1998, is the effective date of the amendment.

Depenbrock's participation in the

---

[8]We note that as of June 28, 2004, the proposed treasury regulation redefining "Protected Benefits" – Section 411(d)(6) (BIN 1545-BC26) – has progressed to the "Final Rule Stage." See 69 Fed. Reg. 37976. However, it is still not the law.

[9]26 C.F.R. § 1.411(d)-3(b) provides in relevant part:

> Under section 411(d)(6) a plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) if a plan amendment decreases the accrued benefit of any plan participant, unless the plan amendment satisfies the requirements of section 412(c)(8) (relating to certain retroactive amendments) and the regulations thereunder. For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same

> adoption and effective dates shall be treated as one plan amendment. Plan provisions indirectly affecting accrued benefits include, for example, provisions relating to years of service and breaks in service for determining benefit accrual, and to actuarial factors for determining optional or early retirement benefits.

Old Plan should have resumed immediately upon his return to work on November 30, 1998. And his participation should have continued until either his employment ended or the terms of participation in the Old Plan were altered by a prospective amendment executed in accordance with CIGNA's specified procedures.

Having determined that the amendment adversely affects Depenbrock, we do not reach the question of CIGNA's compliance with ERISA's notice and disclosure requirements, the validity of Depenbrock's failure-to-produce claim against CIGNA, or the correctness of the District Court's finding of attorney-client privilege.

IV.

Accordingly, for the reasons set forth above, the summary judgment in favor of CIGNA Corporation will be reversed and the case remanded to the District Court with direction to enter summary judgment in favor of John Depenbrock. Costs taxed against CIGNA.