Saima ASHRAF–HASSAN, Appellee

v.

EMBASSY OF FRANCE, in the United States, Appellant

September Term, 2016
No. 16–7082

United States Court of Appeals, District of Columbia Circuit.

FILED ON: JUNE 9, 2017

Katherine Ruth Atkinson, Ari Micha Wilkenfeld, Wilkenfeld Herendeen Law, Washington, DC, Gary M. Gilbert, Law Office Of Gary M. Gilbert & Associates, P.C., Silver Spring, MD, for Plaintiff–Appellee.

Pierre M-P Chone, Law Office Of Pierre Chone, PLLC, Laina Lopez, Berliner, Corcoran & Rowe, LLP, Washington, DC, for Defendant–Appellant.

Before: Garland, Chief Judge, and Henderson and Wilkins, Circuit Judges.

## JUDGMENT

Per Curiam

This appeal of a decision of the United States District Court for the District of Columbia was presented to the Court, and briefed and argued by counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. See D.C. CIR. R. 36(d). For the reasons stated below, it is

ORDERED and ADJUDGED that the District Court's bench verdict, post-trial relief order, and final judgment be affirmed.

From early 2002 to early 2007, Saima Ashraf–Hassan was employed by the Embassy of France in the United States (the "Embassy"). Ashraf–Hassan, a practicing Muslim and French citizen born in Pakistan, alleged that she was subjected to a hostile work environment at the Embassy because of her race, religion, and national origin, in violation of Title VII of the Civil Rights Act. After a four-day bench trial, the District Court concluded that Ashraf–Hassan "ha[d] satisfied her burden of proving a hostile work environment," and awarded her $30,000 in damages, along with attorney's fees and costs. Verdict Tr. at 15:16–17, J.A. 764; id. at 18:18–20, J.A. 767; Final J., J.A. 930.

The Embassy appealed, arguing that the District Court abused its discretion and erred in a variety of ways. We disagree, and affirm the District Court largely for the reasons articulated in its bench verdict and subsequent memorandum opinion denying post-trial relief. We will briefly address the Embassy's principal arguments.

First, the Embassy contends that the District Court abused its discretion by permitting Ashraf–Hassan to offer trial testimony that was inconsistent with her pretrial statement. In April 2002, Ashraf–Hassan was terminated (and reinstated) after she informed her supervisor that she was pregnant. The date she learned of her pregnancy—March or April 2002—was "much disputed." Verdict Tr. at 7:13–14. According to Ashraf–Hassan, both she and her supervisor learned of her pregnancy in March, and she was terminated a month later. According to the Embassy, Ashraf–Hassan learned of her pregnancy in April, lied that she informed her supervisor in

March, and was justifiably terminated for both lying and failing to disclose her pregnancy sooner. The District Court observed, "The testimony on this issue ha[d] been confused and ha[d] gone back and forth in different pleadings in discovery during the whole context of the case." Verdict Tr. at 3:17–20, J.A. 752. This observation is supported by the record, as demonstrated by the following bookends: Ashraf–Hassan's Amended Complaint—filed four years before trial—alleged that she "learned that she had become pregnant" on March 15, 2002, Am. Compl. ¶ 61, J.A. 30; but her pretrial statement—filed two months before trial—stated that she "did not learn she was pregnant until April 16, 2002," Joint Pretrial Statement at 2, J.A. 277. Because the confusion was not new to the case, the District Court found that the Embassy suffered no surprise or prejudice by Ashraf–Hassan's trial testimony, and held that the inconsistent pretrial statement "does not preclude her side from arguing that she learned [of her pregnancy] actually in March 2002." Verdict Tr. at 3:14–15, J.A. 752. The District Court did, however, "consider the [inconsistent] statement in the pretrial statement when [it] weigh[ed] all the evidence in terms of finding the facts." Verdict Tr. at 4:6–7, J.A. 753.

■ According to the Embassy, the District Court should have held Ashraf–Hassan to her pretrial statement, despite the ongoing confusion. As an initial matter, several of the cases cited by the Embassy regard statements memorialized in pretrial orders, *see, e.g.*, *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 784 (D.C. Cir. 1998), but one was not issued here. This distinction is significant because, although a district court should typically issue a pretrial order following a pretrial conference, FED. R. CIV. P. 16(d), D. D.C. R. 16.5(a)(3), it is the order—not necessarily the parties'

statements—that "controls the course" of the trial, absent modification. FED. R. CIV. P. 16(d). Moreover, even when a court *does* issue an order, "the binding effect of pretrial orders ... does not mean that the order is rigidly and pointlessly adhered to at trial." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY JANE, FEDERAL PRACTICE AND PROCEDURE § 1527, at 397 (3d ed. 2010). Otherwise, "a pre-trial order or pre-trial statements would hold the parties in a vise, and the result might be just about as bad as a return to the old sporting theory of justice." *Clark v. Penn. R.R. Co.*, 328 F.2d 591, 594 (2d Cir. 1964); *see also* 6A WRIGHT ET AL., *supra*, § 1527.1, at 404–07 ("The philosophy behind [Rule 16(e)] was aptly summed up in *Clark* ...."). That is precisely the concern here: as a result of "natural confusion or sloppiness by counsel," Verdict Tr. 9:12–13, J.A. 758, Ashraf–Hassan's account of events went back and forth over time, and the Embassy understandably sought to capitalize on the opposing party's latest misstep. But the Embassy's proposed no-exceptions approach to pre-trial statements clashes with the "broad discretion" afforded district judges in managing trials. *See Wash. Hosp. Ctr. v. Cheeks*, 394 F.2d 964, 965 (D.C. Cir. 1968) ("The District Judge must, of course, have broad discretion since he is in a far better position to evaluate the situation than are we."). In light of these principles, we conclude that it was not an abuse of discretion for the District Court to permit trial testimony that was inconsistent with a pretrial statement, especially where that statement was not memorialized in a pretrial order, and the inconsistency was plain and repeated throughout the life of the case.

■ *Second*, the Embassy contends that the District Court erred when it determined that the Embassy could be held liable for the conduct of Ashraf–Hassan's

final "supervisor," Christian Tual. Even if the Embassy were correct that Tual does not satisfy the Title VII definition of "supervisor," *see Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2443–52, 186 L.Ed.2d 565 (2013), Ashraf–Hassan "could still prevail by showing that [the Embassy] was negligent in failing to prevent harassment from taking place," *id.* at 2453. "An employer may be held liable for the harassment of one employee by a fellow employee (a non-supervisor) if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). The District Court found that Ashraf–Hassan repeatedly complained of harassment, including Tual's conduct, to higher-ups at the Embassy. The record supports this finding: for example, Ashraf–Hassan testified at-length that she reported the hostile work environment to a variety of officials from the Embassy and Ministry of Foreign Affairs. The District Court found this testimony credible, and we hold that it was not clear error to find that the Embassy "knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *See Curry*, 195 F.3d at 660; *see also* FED. R. CIV. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). Therefore, the District Court did not err in holding that the Embassy could be held liable for Tual's conduct. *See Vance*, 133 S.Ct. at 2453.

■ *Third*, the Embassy contends that there was insufficient evidence to find a hostile work environment, raising three arguments that we will address in turn. "We note at the outset that an appellant seek-ing reversal of a trial court's findings of fact in a bench trial faces a daunting task. . . . Cases addressing the question of the sufficiency of evidence to support a trial court's findings are similar." *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1293–94 (D.C. Cir. 2010). The Embassy first argues that Ashraf–Hassan's testimony is incredible as a matter of law, specifically as it related to the events surrounding her March 2002 pregnancy disclosure. This incident was "hard to get a handle on," Verdict Tr. at 8:10, J.A. 757, but the District Court "ultimately f[ou]nd that the plaintiff's account is more believable," *id.* 8:23–24, J.A. 757. We "must give due regard to the trial court's opportunity to judge the witnesses' credibility," *Overby*, 595 F.3d at 1294 (quoting FED. R. CIV. P. 52(a)(6)), and consequently find no clear error. Furthermore, the cases cited by the Embassy are inapposite because Ashraf–Hassan's testimony was neither squarely contradicted by other evidence, *see, e.g., United States v. Prokupek*, 632 F.3d 460 (8th Cir. 2011) (contemporaneous statements in a video recording), nor "strongly at variance with the way in which we would normally expect a similarly situated person to behave," *Jackson v. United States*, 353 F.2d 862, 867 (D.C. Cir. 1965). As the District Court explained, Ashraf–Hassan's inconsistent testimony "seem[s] explainable as natural confusion or sloppiness by counsel." Verdict Tr. 9:12–13, J.A. 758.

The Embassy next argues that it was clear error for the District Court to find that Ashraf–Hassan's April 2002 termination, one of the episodes upon which the Court relied for its conclusion that there was a hostile work environment, was motivated by animus. The District Court made that finding as a result of its determination that the supervisor's purported rationale for the termination was not credible. The Court found that, even if Ashraf–Hassan

had lied about having previously informed the supervisor that she was pregnant, "termination would have been a disproportionate response to such a lie." Mem. Op. at 15, J.A. 915. The District Court found it more plausible that the supervisor fired Ashraf–Hassan because she was pregnant, and that the harsh treatment was "an event based on race, national origin and/or religion." *Id.* Two sets of evidence sufficiently support the latter finding: in the months preceding the termination, the supervisor who terminated Ashraf–Hassan twice equated terrorist attacks with Ashraf–Hassan's "people;" and the same supervisor treated Ashraf–Hassan's pregnancy much more negatively than the pregnancies of white, non-Muslim, French-origin employees. The Embassy would like us to disregard the reaction to Ashraf–Hassan's pregnant colleagues because, according to the Embassy, she had not proven that she was "similarly situated" to those colleagues, such that she could prevail on a Title VII claim for the adverse employment action (termination) itself. *See, e.g., Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–20 (D.C. Cir. 2016). But the claim that Ashraf–Hassan took to trial was hostile work environment, not unlawful termination, and the fact that the evidence of disparate treatment is perhaps insufficient to be actionable on its own does not mean that it cannot support the District Court's finding that the April 2002 termination was motivated by animus. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (a single act of harassment may make up part of a hostile work environment claim even though it "may not be actionable on its own"). Therefore, the District Court's finding was not clear error. *See* FED. R. CIV. P. 52(a)(6); *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983) ("[The clear error] stan-

dard applies to the inferences drawn from findings of fact as well as to the findings themselves.").

■ Finally, the Embassy argues that the District Court erred by considering the conduct of two of Ashraf–Hassan's "supervisors"—Chantal Manes and Tual—together. Ashraf–Hassan reported to Manes from 2002 to 2004, and then to Tual from 2004 to 2007. There is no categorical bar to considering the conduct of Manes and Tual together, as one series of acts. *Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007) ("[R]outine personnel actions such as [a change in supervisors] cannot be the type of intervening actions by the employer that would sever the earlier incidents from the more recent incidents constituting [a plaintiff]'s hostile environment claim." (internal quotation marks omitted) (alteration omitted)). Rather, separate acts may be treated collectively to constitute one "unlawful employment practice," *i.e.* a hostile work environment, if those acts are "adequately connected to each other." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). Here, the record contains evidence that Manes and Tual subjected Ashraf–Hassan to the same type of employment actions— harassment and termination motivated by race-, religion-, and national origin-based animus—and did so with relative frequency over four years. Accordingly, the District Court did not commit clear error by treating the conduct of Manes and Tual as "adequately connected to each other," and properly considered the conduct together in evaluating Ashraf–Hassan's hostile work environment claim. *See Vickers*, 493 F.3d at 197–200.

For the foregoing reasons, we affirm the District Court's conclusion that Ashraf–Hassan prevailed on her hostile work environment claim. Pursuant to D.C. Circuit

Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc. See* FED R. APP. P. 41(b); D.C. CIR. R. 41(b).